IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

MICHAEL S. JOHNSON,
Defendant.

Case No. 18–CR–40031–JPG–1

**MEMORANDUM & ORDER**

Before the Court is Defendant Michael S. Johnson's Motion for Compassionate Release. (ECF No. 41). For the reasons below, the Court **DENIES** Johnson's Motion but **STRONGLY RECOMMENDS** the BOP to give him high priority for the COVID-19 vaccine.

I. **PROCEDURAL & FACTUAL HISTORY**

A. **The Conviction**

In 2018, a federal grand jury in this District indicted for distributing methamphetamine and for being a felon found in unlawful possession of a firearm. (Indictment at 1–3 ECF No. 1). He pleaded guilty, and the Court sentenced him to a 210-month term of imprisonment. (Judgment at 1, 3, ECF No. 38). He is currently incarcerated at Federal Correctional Institute ("FCI") Greenville in Illinois. (Johnson's Mot. at 1). His projected release date is April 15, 2033. *See Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited Mar. 25, 2021).[1]

B. **The Presentence Investigation Report**

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about Johnson's background and the nature and circumstances of the offense. (PSR at 1 ECF No. 30).

---

[1] *Available at* https://www.bop.gov/inmateloc/.

According to the PSR, an investigation conducted by state police officers "revealed that Michael Johnson was involved in the distribution of narcotizes and at least one firearm." (*Id.* at 4). Through a confidential source, the officers bought ice-methamphetamine from Johnson four times. (*Id.* at 4–5). The total relevant conduct involved nearly 27 grams of ice. Johnson also sold the confidential source "a stolen AM-15 rifle" and taught the source "how to load the firearm and gave the [source] a magazine containing five, live rounds of ammunition." (*Id.* at 4). The encounter was video recorded. (*Id.*).

Before committing these offenses, Johnson had 19 prior convictions. This includes a 1995 conviction for selling "a look-alike substance to a confidential source"; a 2005 conviction for domestic battery when he struck a female family member "in the face with his fist"; a 2008 conviction for domestic battery when he struck a female household member "in the face with his fist, choking her, and kicking her in the ribs"; and a 2014 conviction for domestic battery when he struck yet another female household member "in the face." (*Id.* at 7–12).

C.  **Johnson's Motion for Compassionate Release**

In 2020, Johnson moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Johnson's Mot. at 1). He contends that serious medical conditions—a "medical history of high blood pressure, cancer, and sleep apnea"—make him especially vulnerable to the COVID-19 virus. (*Id.* at 2). In brief, Johnson argues that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling* reason warranting his release. (*Id.* at 3).

The COVID-19 virus, of course, is now a global pandemic. At FCI Greenville, no inmates currently have COVID-19, 731 have recovered, and none have died. *Coronavirus*, BOP (last visited Mar. 25, 2021).[2]

---

[2]  *Available at* https://www.bop.gov/coronavirus.

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that he faces an increased risk from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Johnson failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristic of the defendant;

(2) the need for the sentence imposed—

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

      (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

(5)    any pertinent policy statement—

      (A)    issued by the Sentencing Commission . . . ; and

      (B)    that . . . is in effect on the date the defendant is sentenced[;]

(6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. . . .
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).

- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.'" *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. Exhaustion

Before moving for compassionate release in federal court, criminal defendants must exhaust their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). In other words, they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) wait 30 days to lapse "from the receipt of such a request by the warden, whichever is earlier." *Id.* This exhaustion requirement is a *mandatory claim-processing rule*, meaning that, "'[i]f properly invoked, [it] must be enforced . . . .'" *United States v. Sanford*, 96 F.3d 779, 782 (7th Cir. 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 1843, 1849 (2019)). And although the Government was not ordered to respond, the Court must still "conduct a preliminary review to determine whether the motion is . . . premature." SDIL Fourth Am. Admin. Order 265 (2020).

Johnson states that he exhausted his administrative remedies before moving for compassionate release here. (Johnson's Mot. at 3). He attached five documents for support: (1) Documentation of Informal Resolution Attempt; (2) Request for Administrative Remedy; and (3) Response to Request

for Administrative Remedy; (4) Regional Administrative Remedy Appeal; and (5) Response to Regional Administrative Remedy Appeal. (*See id.* at 7–8, 13, 18, 22). The Court agrees that these documents collectively reflect that Johnson moved for compassionate release with the warden of FCI Greenville based on his underlying medical conditions and the COVID-19 pandemic, and that the motion was denied because Johnson's "concerns about being potentially exposed to, or possibly contracting, COVID-19 [do] not warrant an early release . . . ." (*See id.* at 22). The Court will therefore consider Johnson's administrative remedies exhausted.

### C. The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 20,000 inmates that it has identified as "suitable for home confinement" and has administered over 80,000 doses of the COVID-19 vaccine. *Coronavirus*, BOP (last visited Mar. 25, 2021).[3] So although not bound by any BOP determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

With that in mind, the § 3553(a) factors weigh against a sentence modification here. While the Court commends Johnson for not having "been cited for any conduct violations during his term of incarceration" and for "maintain[ing] employment with the UNICOR textiles factory at FCI Greenville," (Johnson's Mot. at 2), that is **expected** of him. And though he may suffer from underlying health conditions, the Court must also consider the risks Johnson poses to society. He states that he "is

---

[3] *Available at* https://www.bop.gov/coronavirus/.

a non-violent offender who does not pose any threat to the community," (*id.*), but that is not supported by his laundry list of convictions for domestic battery, among other crimes. The underlying offense also involved the distribution of a highly addictive substance to the public, as well as the sale of a stolen rifle. Johnson was also just sentenced two years ago and still has a long time left on his sentence—about 12 years. Taken as a whole, Johnson's continued incarceration is necessary to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to deter Johnson and other from further crimes, to provide Johnson with further vocational training, and to protect the public.

### III. CONCLUSION

The Court **DENIES** Defendant Michael S. Johnson's Motion for Compassionate Release but **STRONGLY RECOMMENDS** the BOP to give him high priority for the COVID-19 vaccine.

**IT IS SO ORDERED.**

**Dated: Thursday, March 25, 2021**

S/J. Phil Gilbert
**J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE**
